UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENT N. TORTOLANO,<br><br>      Petitioner,<br><br>vs.<br><br>AL RAMIREZ,<br><br>      Respondent. | Case No. 1:16-cv-00109-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

  The Petition for Writ of Habeas Corpus filed by Petitioner Brent N. Tortolano is now fully briefed and ripe for adjudication. Dkt. 1, 13. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**THRESHOLD TIMELINESS ISSUE**

In his Answer and Brief in Support of Dismissal, Respondent Al Ramirez asserts that Petitioner's entire Petition should be dismissed for failure to file the Petition within the statute of limitations period. Dkt. 13. The Court will address this threshold defense first.

**1.      Standard of Law**

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period in cases originating in the Idaho state courts is as follows, depending on how far a petitioner pursues his claim:

---

[1] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

| **Action Taken** | **Finality Occurs** |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a statutory tolling provision that stops or suspends the one-year limitations period from running during the time in "which a *properly filed* application for State postconviction or other collateral review . . . is pending." 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 3**

§ 2244(d)(2) (emphasis added). The "time limits on postconviction petitions are 'condition[s] to filing'"; therefore, "an untimely petition [is] not deemed 'properly filed.'" *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (quoting *Artuz v. Bennett*, 533 U.S. 4, 8, 11 (2000)).

For purposes of calculating the federal statute of limitations, this statutory tolling provision applies only to "pending" actions; therefore, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur for post-conviction actions.[2]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once the federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820,

---

[2] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

**MEMORANDUM DECISION AND ORDER - 4**

822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

## 2. Background Facts and Discussion

Petitioner was convicted of the second-degree murder of his girlfriend after his case was presented to a jury in a criminal action in the Fourth Judicial District Court in Ada County, Idaho. The Idaho Court of Appeals summarized the facts surrounding the crime as follows:

> Penny Moore was shot once in the head while sitting in her car in a fast-food restaurant parking lot. Moore's boyfriend, Tortolano, had been seen in the restaurant with Moore, as well as arguing with her in her car, prior to the shooting. After a gunshot was heard by others outside the restaurant, Tortolano was seen speeding out of the parking lot by four acquaintances, screaming Moore's name, crying and operating his cell phone. Tortolano dialed 911 on his cell phone and was told to pull over until paramedics arrived. Tortolano drove into a car wash parking lot. Tortolano told police that he and Moore had gone to the restaurant to buy marijuana and that while he was in the restroom, she was shot. Moore died in the hospital from the gunshot wound four days after she was shot.
>
> Seven weeks after the shooting, a gun was found at the car wash. The gun matched the description of a gun that Moore owned and that Tortolano had handled in the past. DNA from blood found on the gun matched Moore's DNA.

State's Lodging B-7, pp. 1-2.

On August 29, 2003, Petitioner was sentenced to 30 years in prison, with the first 20 years fixed. Thereafter, Petitioner sought direct review of his judgment of conviction.

**MEMORANDUM DECISION AND ORDER - 5**

The Idaho Court of Appeals affirmed the conviction and sentence. The Idaho Supreme Court denied his petition for review on August 17, 2006. *See* State's Lodgings B-1 to B-11.

Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Therefore, his judgment of conviction became final 90 days after August 17, 2006, which was on November 15, 2006. The federal habeas corpus statute of limitations began running on that date.

After 272 days of his statute of limitation period passed, Petitioner filed his first post-conviction action on August 14, 2007. State's Lodging C-1, pp. 4-8. Petitioner's statute was tolled, or temporarily stopped on that date, with 94 days remaining.

Petitioner's first post-conviction petition was dismissed by the state district court, and Petitioner appealed. The appeal concluded on October 4, 2010, the date the remittitur was issued in the appeal. *See* State's Lodgings D-1 to D-18. The federal statute of limitations began running again the next day, October 5, 2010, and expired 94 days thereafter on January 7, 2011.

Petitioner's next state court action, a successive post-conviction action was not filed until June 26, 2012, about eighteen months after the federal statute had expired. The late-filed state petition did not re-start the already-expired federal statute of limitations. *See Ferguson*, 321 F.3d at 823.

**MEMORANDUM DECISION AND ORDER - 6**

Five years passed before Petitioner filed his federal petition on February 16, 2016. Hence, his petition is untimely, and the merits of his claims cannot be adjudicated unless one of the exceptions applies: equitable tolling or actual innocence.

3.     **Standard of Law re: Equitable Tolling**

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*," 544 U.S. 408 (2005), the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* at 418. In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (holding that a petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

4.     **Discussion re: Equitable Tolling**

Respondent has adequately outlined the law on equitable tolling. Dkt. 13, pp. 10-11. Petitioner has chosen not to file a reply to Respondent's request for dismissal of his Petition on statute of limitations grounds. Upon its own review of the record, the Court finds insufficient facts to show that equitable tolling is warranted.

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner seems to have struggled with bipolar disorder since his teenage years, but medication tends to help his decisionmaking skills and to calm him. Even when Petitioner was not taking his medication, such as during pretrial and trial proceedings, he was found to have been lucid and rational enough to understand the proceedings. *See* State's Lodgings C-1 through D-11. Other evidence in the record exists to show that Petitioner had the ability to prepare court filings to protect his interests. For example, Petitioner submitted his own handwritten pro se post-conviction appellate briefing in December 2009. State's Lodging C-9. Nothing in the record shows that Petitioner was unable to submit a federal petition between November 2006 and August 2011, before his federal statute of limitations expired. No other factual grounds exist to support application of equitable tolling in this case.

**5.     Standard of Law re: Actual Innocence**

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations. That exception applies only if a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). In addition, "'[a]ctual innocence means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

To make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

6. **Discussion of Actual Innocence Exception**

Petitioner has not brought an actual innocence argument. Upon a review of the record, the Court concludes that Petitioner has not shown that he is factually innocent of the second degree murder of Penny Moore. Therefore, this exception to the statute of limitations does not apply.

## ALTERNATIVE RULING ON THE MERITS

The Court alternatively considers the merits of Petitioner's claim as if it had been timely. Review is de novo because there is no state appellate court decision to review.

1. **Standard of Law**

If the state appellate court did not decide a properly-asserted federal claim, the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1), the federal district court may

**MEMORANDUM DECISION AND ORDER - 9**

consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

The standard for a claim of prosecutorial misconduct on habeas review is a "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Inquiry into the fundamental fairness of a trial requires the court to examine the effect of any misconduct within the context of the entire proceedings. *Id*.

In *Frazier v. Cupp*, 394 U.S. 731 (1969), the Supreme Court expressly addressed attorney opening statements:

> "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." *See Hopt v. Utah*, 120 U.S. 430, 438, 7 S.Ct. 614, 30 L.Ed. 708 (1887). It may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description

> and the actual presentation constitutes reversible error, when a proper limiting instruction has been given. Even if it is unreasonable to assume that a jury can disregard a coconspirator's statement when introduced against one of two joint defendants, it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940).

*Id*. at 735–36.

**2.     Background Facts and Discussion**

Petitioner brings one claim in his federal Petition—that his right to a fair trial was violated when the prosecutor stated in opening argument it would be calling a witness, Fred Latham, to testify that, two days before the shooting, Petitioner told him, "It's too bad I'm going to have to kill her," but the prosecution never called the witness. State's Lodging A-3, pp. 258-59. Petitioner asserts that the prosecutor revealed this information to the jury, "knowing that statement wasn't true." Dkt. 1, p. 6 (verbatim). Petitioner further asserts: "Had I known the prosecutor lied about this statement, I would of pled guilty to the plea bargain of voluntary manslaughter." *Id*. (verbatim). Petitioner alleges that he did not intend to kill Ms. Moore, but acted recklessly in causing her death. *Id*.

Even if the prosecutor knew the statement was false, the record contains evidence from which the jury could have inferred that Petitioner intended to kill Ms. Moore.

Jennifer Kavulich, a friend of Ms. Moore, testified that, after Petitioner and Ms. Moore had a physical altercation, Petitioner told Jennifer, "if anything ever happened to her [the victim], you [Jennifer] would know who did it . . . I'm serious, I'll kill her." State's Lodging A-3, p. 1160.

In addition, Petitioner showed Danielle Collins the murder weapon two days before Ms. Moore was killed. On that occasion, Petitioner said to Danielle, "I'm going to go on a killing spree…. Do you want to add any names to my list?" *Id*., p. 1131. Petitioner laughed, and Danielle laughed, too, thinking he was joking.

Petitioner lied to police investigators when he asserted that someone had shot Ms. Moore while he was in the bathroom. The murder weapon was found at the car wash where Petitioner parked his car after the shooting. The gun was identified as Ms. Moore's. It had Petitioner's fingerprints and Ms. Moore's blood on it.

As mentioned above, the prosecutor previewed for the jury Mr. Latham's potential testimony in the opening argument. The prosecutor had spoken to Mr. Latham earlier, but he could not be found for trial. During the course of trial, the prosecution did not mention Mr. Latham further and did not mention him during closing. While the prosecutor's remark—that Mr. Latham would testify that, just two days prior to the shooting, he heard Petitioner say he was going to kill Ms. Moore—was an important part of the prosecution's case, any prejudice to the defense was mitigated by (1) multiple jury instructions and admonitions that opening and closing statements were *not* evidence and

**MEMORANDUM DECISION AND ORDER - 12**

that only evidence presented at trial could be considered, *see* State's Lodging A-1, pp. 188, 192, 1560, 1569-70, 172(2); two other witnesses' testimony that Petitioner planned to kill Ms. Moore, discussed above; and (3) the overwhelming amount of physical evidence showing that Petitioner was the shooter, also discussed above.

Therefore, the Court concludes that Petitioner's claim does not warrant habeas corpus relief because the entire record shows that the prosecutor's remark did not infect the trial with unfairness as to make the resulting conviction a denial of due process.

For the same reasons, any error was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (petitioners are not entitled to habeas corpus relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict"); *O'Neal v. McAninch*, 513 U.S. 432, 438-39 (1995) (relief warranted only where the habeas court is "in grave doubt" about the effect of the error on the jury).

## CONCLUSION

Petitioner's Petition for Writ of Habeas Corpus is dismissed for failure to meet the statute of limitations. Alternatively, the Court denies the Petition on the merits. The Court does not reach Respondent's procedural default defense.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: October 30, 2018

_____
David C. Nye
U.S. District Court Judge